**Stuart A. COHEN, Respondent,**

v.

**EXPRESS FINANCIAL SERVICES, INC., d/b/a Quality Cars and Credit, Inc., Appellant,**

**William Hodson, Defendant.**

**No. WD 63156.**

Missouri Court of Appeals,
Western District.

Oct. 12, 2004.

Dale K. Irwin, Kansas City, MO, for Respondent.

Charles H. Stitt, Kansas City, MO, for Appellant.

Before ULRICH, P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Chief Judge.

Express Financial Services, Inc., D/B/A/ Quality Cars and Credit, Inc., appeals from the judgment, following a jury trial, of the Circuit Court of Jackson County for the respondent, Stuart Cohen, on his claim against the appellant for damages, actual and punitive, for a violation of § 407.020.1 [1] of the Missouri Merchandising Practices Act (MMPA), §§ 407.010–.1132, as provided in § 407.025.1 of the Act. In the trial court's judgment against the appellant, the respondent was awarded actual damages of $8,775 and punitive damages of $25,000. He was also awarded actual damages of $8,775 and punitive damages of $1,000 against William Hodson, an employee of the appellant's who does not appeal. With respect to his MMPA claim against the appellant, the respondent alleged that it was vicariously liable to him for Hodson's intentional omission of a material fact in connection with the sale of a 1997 Suzuki Sidekick, which was done in the course and scope of Hodson's employment with the appellant and violated § 407.020.1.

The appellant raises three points on appeal. In Point I, it claims that the trial court erred in overruling its motion for judgment notwithstanding the verdict (JNOV), requesting that the jury's verdict assessing punitive damages against it be set aside, because § 407.025.1 of the MMPA precluded a jury trial on that issue. In Point II, it claims that even if it was proper procedurally for the jury to deliberate on and assess punitive damages, the trial court nonetheless erred in denying its motion for JNOV, requesting that the jury's verdict assessing punitive damages against it be set aside, because the submission of punitive damages to the jury was not supported by the evidence. In Point III, it claims that the trial court erred in failing to remit the punitive damage award assessed against it from $25,000 to $1,000, the same as the punitive damage award assessed against Hodson, because even if the MMPA permitted the submission of punitive damages to the jury and the record supported such a submission, the record did not support an award of punitive damages against it greater than that awarded against its employee and agent, Hodson.

We dismiss as to Point I, and affirm as to Points II and III.

## Facts

On February 18, 2003, the respondent filed a second amended petition, alleging that the appellant's sales manager, Hodson, violated § 407.020.1 of the MMPA by intentionally omitting a material fact in connection with the sale of a 1997 Suzuki Sidekick, and that the appellant was vicariously liable to him for Hodson's intentional omission. Specifically, he alleged that Hodson knew, but failed to disclose, that the Sidekick had been extensively damaged in an accident and had been improperly rebuilt.

On June 3, 2003, the respondent's case proceeded to a jury trial. Before any evidence had been presented, the trial court heard arguments on several pending motions *in limine*. It then inquired of the attorneys whether there was "[a]nything else" to take up with the court, at which time the following exchange took place:

> [PLAINTIFF'S COUNSEL]: The only other thing was the—maybe we should have a little record on the fact that the Court is, if we make a submissible case under 407, and a submis-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

sible case for punitives, that the Court has ruled that it will submit the issue of punitives to the jury.

THE COURT: We're not bifurcating. If the Court makes that determination, it will be done in case in chief and we won't have a bifurcated trial, correct?

[DEFENSE COUNSEL]: Correct.

[PLAINTIFF'S COUNSEL]: Correct.

THE COURT: Anything else, gentlemen?

[PLAINTIFF'S COUNSEL]: If the Court makes that determination of punitives under the Merchandising Practices Act, it will be submitted to the jury?

THE COURT: Yes, sir.

[PLAINTIFF'S COUNSEL]: Thank you. Nothing else.

[DEFENSE COUNSEL]: Nothing else.

At trial, the respondent called four witnesses, while neither the appellant nor Hodson presented any evidence. The respondent's first witness was himself, who testified that, in April, 2001, he purchased a 1997 Suzuki Sidekick from the appellant, dealing directly with Hodson. He later discovered that the Sidekick had been extensively damaged and improperly rebuilt. He further testified that Hodson failed to disclose the Sidekick's history to him, except to say that he had obtained it from a friend, who was only selling it in order to purchase a vehicle with an automatic transmission. In addition, he testified that, upon his discovery of the Sidekick's history, he immediately returned to the appellant's lot, at which time his complaints were completely disregarded and he was eventually thrown off the lot by the appellant's new sales manager, who had replaced Hodson.

Hodson testified, when called by the respondent, that he did not actually obtain the Sidekick from a friend, but had obtained it from another used car dealership. However, he testified that at the time he sold the Sidekick to the respondent, he was not aware of its questionable history, although he admitted that he inspected it before selling it to the respondent. He also testified that, due to his extensive experience in the auto sales business, he normally is able to detect the warning signs indicating that a vehicle has been damaged and improperly rebuilt.

Ronald Schritenthal, the assistant manager of Odessa Kansas City Auto Auction, and Richard Diklich, a retired teacher and automobile expert, also testified on behalf of the respondent. Schritenthal testified that the Sidekick was sold at auction on October 24, 2000, and Diklich testified that the damage to the Sidekick would have been obvious to anyone with the proper training or experience.

At the close of the respondent's evidence, and again at the close of all the evidence, the appellant moved for a directed verdict, which the trial court denied. The case was submitted to the jury, including the issue of punitive damages. No objection was made to the issue of punitive damages being submitted to the jury.

The jury returned verdicts against both the appellant and Hodson, based on Hodson's violation of the MMPA, awarding the respondent actual damages against the appellant of $8,775 and punitive damages of $25,000, and actual damages of $8,775 and punitive damages of $1,000 against Hodson. The trial court accepted the jury's verdicts, entering judgment thereon.

On July 16, 2003, the appellant filed what it denominated a motion for JNOV, alleging that it was "entitled to judgment, notwithstanding the verdict, eliminating the entire amount of the punitive damages assessed against it," because: (1) "con-

trary to § 407.025, RSMo.2000, (a) the decision to award punitive damages was made by the jury, rather than the trial court, and (b) the trial court did not exercise any discretion, with respect to the imposition of punitive damages, or the amount thereof"; and (2) "there was insufficient evidence to support an award of punitive damages against it, in that plaintiff failed to adduce any evidence proving that Hodson was actually aware of facts indicating that the vehicle had been wrecked and rebuilt." In addition, the appellant alleged in its motion that it was "entitled to judgment, notwithstanding the verdict, eliminating all but $1,000 of punitive damages assessed [against it], because there was no required finding of any facts that would justify the imposition of any greater amount of punitive damages against [it] than were imposed against co-defendant Hodson." On July 23, 2003, the trial court denied the appellant's motion without elaboration.

This appeal followed.

## I.

In Point I, the appellant claims that the trial court erred in overruling its motion for JNOV, requesting that the jury's verdict assessing punitive damages against it be set aside, because § 407.025.1 of the MMPA precluded a jury trial on that issue. Specifically, it claims that by instructing the jury on the issue of punitive damages, "the trial court abdicated to the jury the functions that were expressly and specifically reserved to the trial court under § 407.025—namely, the discretion whether to award punitive damages, and, if so, in what amount."

In claiming as it does in this point, the appellant is not claiming that the respon-

dent failed to make a submissible case for punitive damages. It makes that claim in Point II. Rather, in this point, the appellant is claiming that as a matter of procedural law, specifically § 407.025, a plaintiff in a MMPA case does not have a right to a jury trial on the issue of punitive damages such that it was error for the trial court to submit to the jury the respondent's claim against the appellant for punitive damages. Thus, inasmuch as a motion for JNOV, as provided in Rule 72.01(b),[2] challenges only the sufficiency of the evidence to submit the plaintiff's case to the jury, *Kinetic Energy Dev. Corp. v. Trigen Energy Corp.*, 22 S.W.3d 691, 697 (Mo.App.1999), the appellant's denomination of its motion as one for JNOV was incorrect, a fact it readily admits in its brief, stating that it should be treated as "the equivalent of a motion to modify the judgment" by striking the award of punitive damages against it.

The problem with treating the appellant's motion as a motion to "modify the judgment" is that, even if we were to find that it was error for the trial court to allow the jury to deliberate on the issue of punitive damages, the only appellate relief to which the appellant would be entitled, under this point, would be to have a new trial before the court on the issue of punitive damages, such that the motion would be properly denominated as a motion for new trial. This is so in that § 407.025.1 expressly authorizes an award of punitive damages by the "court," and the appellant makes no challenge in this point to the sufficiency of the evidence for the trial court to make such an award in this case; although in Point II, albeit in the context of a submissible case as a matter for the

---

**2.** All rule references are to the Missouri Rules of Civil Procedure, 2004, unless otherwise

indicated.

jury, the appellant does raise the sufficiency of the evidence to support an award of punitive damages. In any event, inasmuch as we find, for the reasons discussed, *infra*, that the claim of error raised in this point was not properly preserved for our review and we decline plain error review, requiring dismissal of the point, it is not necessary that we decide the proper designation of the appellant's motion.

There is no dispute between the parties that § 407.025.1 permits a MMPA plaintiff, such as the respondent, to recover punitive damages. The dispute is over whether § 407.025.1 permits the jury to deliberate on the issue of those damages in MMPA cases. Section 407.025.1 provides that:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. *The court may, in its discretion, award punitive damages* and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

(Emphasis added.) In contending that § 407.025.1 expressly reserves the determination of punitive damages to the trial court, the appellant points to the language of the section stating that the "*court* may, in its discretion award punitive damages." (Emphasis added.) Despite this language, the respondent contends that he has a right under the Missouri Constitution, art. I, section 22(a), to have his MMPA action for damages, actual and punitive, tried by a jury, citing *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82 (Mo. *banc* 2003). There, the Missouri Supreme Court held that, despite statutory language in § 213.111.2,[3] that is very similar to the language of § 407.025.1 concerning awards of punitive damages being the province of the trial court, the plaintiff had the right under the Missouri Constitution, art. I, section 22(a), to have her Missouri Human Rights Act civil action, for damages only, tried by a jury. *Id.* at 84.

 Before addressing the issue of whether the respondent had a right to have his MMPA punitive damage claim tried to the jury, we first must address his contention that the appellant failed to preserve the issue raised in this point for appeal in that it failed to object at trial to the court's instructing the jury on the issue of punitive damages. In that regard, Rule 70.03 provides that:

> Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

Under the rule, "[t]imely objections [to jury instructions] are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and in-

3. Section 213.111.2, governing MHRA actions, provides, in pertinent part, that the "*court* ... may award to the plaintiff actual and punitive damages." (Emphasis added.)

expensively without risking the delay and expense of an appeal and a retrial." *Gomez v. Construction Design, Inc.,* 126 S.W.3d 366, 371 (Mo. *banc* 2004).

The record reflects that the issue of punitive damages, as to the respondent's MMPA claim against the appellant, was submitted to the jury in Instruction No. 16, which was patterned after MAI 10.01 [1990 Revision] and MAI 10.03 [1983 Revision] and was submitted by the respondent. It reads:

> If you find the issues in favor of [respondent], and if you believe the conduct of [appellant] as submitted in Instruction Number 13 was outrageous because of [appellant's] evil motive or reckless indifference to the rights of others, then, in addition to any damages to which you find [respondent] entitled under Instruction Number 15, you may award [respondent] an additional amount as punitive damages in such sum as you believe will serve to punish [appellant] and to deter [appellant] and others from like conduct.

> If punitive damages are assessed against more than one defendant, the amounts assessed against such defendants may be the same or they may be different.

The record further reflects that the appellant did not object to the giving of this instruction. In fact, as we discuss, *supra,* the record reveals that on the first day of trial, before any evidence had been presented, the appellant's trial counsel agreed with the trial court that the issue of punitive damages should be submitted to the jury, provided the respondent made a submissible case for such a submission. Inasmuch as the appellant did not object to Instruction No. 16, it failed to preserve its claim in this point that it was error for the jury to be instructed on punitive damages on the basis that the MMPA, specifically § 407.025.1, does not permit a jury trial on the issue of punitive damages. Rule 70.03; *Gomez,* 126 S.W.3d at 371; *Mo. Highway & Transp. Comm'n v. Kansas City Cold Storage, Inc.,* 948 S.W.2d 679, 682 (Mo. App.1997). And, because the issue was not properly preserved for appellate review, the only review, if any, would be for plain error, in accordance with Rule 84.13(c). *Kansas City Cold Storage,* 948 S.W.2d at 682. Rule 84.13(c) provides that "[p]lain errors affecting substantial rights may be considered on appeal, in the discretion .of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice. *Bedwell v. Bedwell,* 51 S.W.3d 39, 43 (Mo.App. 2001). If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court actually committed evident, obvious and clear error that affected substantial rights. *State v. Hibler,* 21 S.W.3d 87, 96 (Mo.App.2000). However, as in the case of regular appellate review, not every obvious, evident and clear error found in plain error review requires reversal. In the case of regular review, to be reversible, the error found must have prejudiced the appellant. *Coats v. Hickman,* 11 S.W.3d 798, 807 (Mo.App.1999). Likewise, in the case of plain error review, the error must have prejudiced the appellant, except that such prejudice must constitute manifest injustice or a miscarriage of justice. *Slan-*

*kard v. Thomas*, 912 S.W.2d 619, 628 (Mo. App.1995). Thus, in the second step of reviewing for plain error, the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage of justice.

■■■ "The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *Messina v. Prather*, 42 S.W.3d 753, 763 (Mo.App.2001). As a practical matter, we rarely resort to plain error review in civil cases. *Coats*, 11 S.W.3d at 805. Furthermore, the plain error doctrine cannot be used to "revive issues already abandoned by selection of trial strategy or oversight." *In re Swearingen*, 42 S.W.3d 741, 746 (Mo. App.2001); *King v. Unidynamics Corp.*, 943 S.W.2d 262, 266 (Mo.App.1997); *French v. Mo. Highway & Transp. Comm'n*, 908 S.W.2d 146, 153 (Mo.App. 1995).

Here, not only did the appellant fail to object at trial to the giving of the punitive damage instruction, Instruction No. 16, but it affirmatively expressed to the trial court that it was proper for it to instruct the jury on punitive damages. Thus, the appellant abandoned at trial the issue it now seeks to raise on appeal such that we cannot justify exercising our discretion to conduct plain error review thereon.

Point dismissed.

## II.

■■ In Point II, the appellant claims that even if it was proper procedurally for

the jury to deliberate on and assess punitive damages, the trial court nonetheless erred in denying its motion for JNOV, requesting that the jury's verdict assessing punitive damages against it be set aside, because the submission of punitive damages to the jury was not supported by the evidence.[4] Specifically, it claims that the respondent failed to make a submissible case against it for punitive damages in that he "failed to adduce any evidence proving that [the appellant's employee, Hodson] was actually aware of facts indicating that the vehicle in question had been wrecked and rebuilt."

■■■ Our standard of review as to the denial of a motion for JNOV is essentially the same as that for the denial of a motion for a directed verdict. *Balke v. Cent. Mo. Elec. Coop.*, 966 S.W.2d 15, 20 (Mo.App.1997). We will affirm the trial court's denial of a motion for JNOV as long as the plaintiff made a submissible case. *Id.* In reviewing for a submissible case, we view the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable inferences that can be drawn from the evidence, while disregarding all unfavorable evidence and inferences. *Faust v. Ryder Commercial Leasing & Servs.*, 954 S.W.2d 383, 388 (Mo.App.1997).

■■ To make a submissible case for punitive damages, the plaintiff must present substantial evidence establishing that

---

4. If the appellant were successful in its claim in Point I, that the issue of punitive damages was not subject to trial by jury in a MMPA case, the claim in this point would not be one of submissibility. Rather, it would simply be a matter of the sufficiency of the evidence to support the trial court's decision in keeping with the standard of review of *Murphy v. Carron* 536 S.W.2d 30, 32 (Mo. *banc* 1976) (holding that, in judge-tried cases, the judg-

ment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law). This is so in that as to judge-tried issues, there is obviously no jury involved, such that the trial court has no gatekeeper role in determining whether the evidence is legally sufficient to submit a particular issue to the jury for determination.

the defendant's conduct was "outrageous because of [the] defendant's evil motive or reckless indifference to the rights of others." *Carpenter v. Chrysler Corp.,* 853 S.W.2d 346, 364 (Mo.App.1993) (*citing Burnett v. Griffith,* 769 S.W.2d 780, 789 (Mo. *banc* 1989)); *see also Chong v. Parker,* 361 F.3d 455, 458–59 (8th Cir.2004). Substantial evidence is competent evidence from which the trier-of-fact can reasonably decide the case. *Mathis v. Jones Store Co.,* 952 S.W.2d 360, 366 (Mo.App.1997). Thus, in order to make a submissible case for punitive damages on his MMPA claim against the appellant for Hodson's misrepresentation in the sale of the Suzuki Sidekick,[5] the respondent not only had to show that Hodson knew the Sidekick had been damaged and improperly rebuilt, but that his non-disclosure of this fact was outrageous because of an evil motive or reckless indifference to the rights of the respondent.

At trial, Hodson testified that he had worked in the auto sales business for many years, and, due to his experience, was able to detect the signs indicating that a vehicle had been damaged and improperly rebuilt. He further testified that he inspected the Sidekick before selling it to the respondent. In addition, the respondent's expert, Richard Diklich, testified that the damage to the Sidekick would have been obvious to anyone with the proper training or experience. From this evidence alone, the jury could have reasonably inferred that Hodson knew the Sidekick had been damaged and improperly rebuilt. In other words, it was reasonable for the jury to infer that an expert such as Hodson, who had inspected the vehicle containing obvious warning signs of prior damage, would have noticed them. Further support for such an inference stems from the fact that Hodson misrepresented the Sidekick's origin, telling the respondent that he obtained it from a friend, when in actuality it was obtained from another used car dealership.

In claiming that the respondent "failed to adduce any evidence proving that [Hodson] was actually aware of facts indicating that the vehicle in question had been wrecked and rebuilt," the appellant appears to be contending that the respondent was required to present direct evidence establishing that Hodson knew the Sidekick had been damaged and improperly rebuilt, such as an admission from Hodson to that effect. In other words, the appellant seems to be suggesting that the jury could not conclude that Hodson knew the Sidekick had been damaged and improperly rebuilt based on circumstantial evidence tending to support such an inference. Inasmuch as it is well settled that, when reviewing for a submissible case, we give the plaintiff the benefit of all reasonable inferences that can be drawn from the evidence, *Faust,* 954 S.W.2d at 388, such a claim is wholly without merit.

In addition to the claim raised in its point relied on in Point II, the appellant raises an additional claim in the argument portion of the point. In that regard, it argues that the evidence was insufficient to show the additional proof element of punitive damages, that Hodson's intentional omission was outrageous because of an evil motive or reckless indifference to the rights of others. We are not required to address claims not raised in the point relied on. *Pearman v. Dep't of Soc. Servs.,* 48 S.W.3d 54, 55 (Mo.App.2001). However, an *ex gratia* review reveals that the evidence was sufficient to show that Hodson's omission was outrageous.

---

**5.** It is well settled that a principal is liable for the conduct of all of its officers and employees, i.e., agents. *Brown v. New Plaza Pontiac Co.,* 719 S.W.2d 468, 473 (Mo.App.1986).

In *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346 (Mo.App.1993), the appellants brought suit against an automobile dealership alleging, *inter alia,* fraudulent misrepresentation for the dealership's failure to disclose certain repairs it had made to the vehicle in which they purchased. *Id.* at 351. On appeal, the appellants claimed, *inter alia,* that the trial court erred in refusing to submit the issue of punitive damages to the jury. *Id.* at 364. The appellate court agreed, holding that "the jury could reasonably infer that [the dealership's omissions] were taken with reckless indifference to the rights of the [appellants] or were evil, motivated solely by [its] desire to make a sale regardless of the repairs [it] had undertaken but had not disclosed." *Id.; see also Chong,* 361 F.3d at 459 (holding that seller's intentional misrepresentation sufficiently supported assessment of punitive damages against it). Likewise, in the case at bar, it seems reasonable for the jury to infer that the intentional non-disclosure by Hodson was done with reckless indifference to the rights of the respondent or was evil, motivated solely by a desire to make a sale regardless of the fact that the Sidekick had been wrecked and improperly rebuilt.

Point denied.

### III.

■ In Point III, the appellant claims that the trial court erred in failing to remit the punitive damage award assessed against it from $25,000 to $1,000, the same as the punitive damage award assessed against Hodson, because even if the MMPA permitted the submission of punitive damages to the jury and the record supported such a submission, the record did not support an award of punitive damages against it greater than that awarded against its employee and agent, Hodson.[6] Specifically, it claims that in cases based on vicarious liability, a disparity in the amount of punitive damages assessed against a principal and its agent can only be justified if there is evidence establishing that the principal's net worth is greater than that of its agent, which evidence is not present in this case.

Section 510.263.6 authorizes a trial court to reduce or remit an award of punitive damages. Although the appellant concedes that the law permits a different award of punitive damages against the employer than the employee, where the claim against the employer is based on respondeat superior, it claims that such an award is only justified if there is evidence of a "disparity in the net worth of these two defendants," citing *Bradshaw v. Deming,* 837 S.W.2d 592, 594–95 (Mo.App.1992), and that there is no such evidence in the record. The respondent, while conceding that the record is lacking in any evidence concerning the net worth of the appellant and Hodson, contends that the higher assessment of punitive damages against the appellant was justified by the egregious after-sale conduct of the appellant's new sales manager, in which Hodson was not involved, citing *Brown v. New Plaza Pontiac Co.,* 719 S.W.2d 468, 473 (Mo.App.

---

6. The appellant first alleged that such a disparity could not stand in its after-trial motion, which, as explained in Point I, *supra,* was denominated a motion for JNOV. However, as we also explained in Point I, the appellant incorrectly characterized its motion as a motion for JNOV, inasmuch as a motion for JNOV challenges only the sufficiency of the evidence to submit the issue to the jury. *Ki-* *netic Energy Dev. Corp.,* 22 S.W.3d at 697. Thus, inasmuch as an allegation challenging only the disparity between the two punitive damage awards clearly is not a challenge to the sufficiency of the evidence to submit the issue to the jury, the appellant incorrectly labeled its motion as a motion for JNOV, as it simply constituted a motion for remittitur.

1986). As to such evidence, the respondent points to the evidence that upon his return to the appellant's lot, his complaints were not only totally disregarded by the appellant's new sales manager, but he threw him off the lot, which would indicate that the appellant's policy was to engage in questionable sales such as this one.

In *Bradshaw,* the appellants filed suit for damages against their minister and his employer, alleging, *inter alia,* breach of fiduciary duty. 837 S.W.2d at 593. The jury returned verdicts against the minister and his employer, assessing a higher amount of punitive damages against the employer. *Id.* The trial court, however, modified the judgment, equalizing the awards. *Id.* On appeal, the appellants claimed, *inter alia,* that the trial court erred in modifying the judgment and sought to have the original amounts reinstated. *Id.* at 594. While the appellate court agreed that disparate awards are permitted, the court found against the appellants because there was no justification in the record supporting such awards, stating that: "[w]ithout evidence of greater net worth—*or some justification for more punitive damages against the principal than against the agent*—the verdicts in unequal amounts cannot stand." *Id.* at 595 (emphasis added). Hence, while *Bradshaw* supports the proposition that a disparity between the amount of punitive damages assessed against a principal and its agent is justified where the record contains evidence establishing that the principal has a greater net worth, it does not support the proposition that evidence of a greater net worth is absolutely necessary to support such an award.

In *Brown,* the appellant brought a fraudulent misrepresentation action against a used car dealership and its salesman. 719 S.W.2d at 472. The jury returned verdicts against the dealership and its salesman, assessing punitive damages only against the dealership. *Id.* On appeal, the dealership claimed that, because the claim for actual damages was based solely on a theory of agency, "it is only [the salesman's] conduct which is to be considered under [the] punitive damages claim." *Id.* The court disagreed, explaining that "it is not [the salesman's] conduct alone which should be considered in determining whether [to assess punitive damages against the dealership]. [The salesman] is an agent of [the dealership] and therefore, the conduct of all the officers and employees of [the dealership] ... is imputed to [the dealership]." *Id.* at 473. This is consistent with *Curry v. Hedrick,* 378 S.W.2d 522, 536 (Mo.1964), where our Supreme Court explained that "[e]vidence of other acts of [the] defendant than those alleged for which damages are sought, both preceding as well as following the particular acts, is admissible under an issue of exemplary damages if so connected with the particular acts as tending to show [the] defendant's disposition, intention, or motive in the commission of the particular acts for which damages are claimed." *See also Maugh v. Chrysler Corp.,* 818 S.W.2d 658, 663 (Mo.App.1991). Thus, contrary to the appellant's claim, the jury was free to consider the conduct of the appellant's new sales manager when assessing punitive damages, and thereby attribute a higher degree of culpability to the appellant than to Hodson.

Because the jury was free to consider the conduct of the appellant's new sales manager when assessing punitive damages, and, based on that conduct, assess a higher degree of culpability to the appellant than to Hodson, the jury was also free to assess more punitive damages against the appellant than against Hodson. It follows then that the trial court did not err in failing to remit the punitive damage award

assessed against the appellant from $25,000 to $1,000.

Point denied.

### Conclusion

The judgment for the respondent on his second amended petition for damages based on a violation of the MMPA is affirmed.

ULRICH, P.J., and LOWENSTEIN, J., concur.