

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| MARILYN WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | **WD84714** |
| v. | ) | **(Consolidated with WD84749)** |
| | ) | |
| | ) | **OPINION FILED:** |
| SIOUX CHIEF MFG. CO., INC., | ) | **December 20, 2022** |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Justine E. Del Muro, Judge**

**Before Division One:** Janet Sutton, Presiding Judge, and
Alok Ahuja and Karen King Mitchell, Judges

Sioux Chief Manufacturing Co., Inc., appeals from a default judgment entered in favor of its former employee, Marilyn Washington, on her claims of employment discrimination and retaliation brought under the Missouri Human Rights Act (MHRA). As a sanction for repeated discovery violations, the trial court struck Sioux Chief's pleadings and entered a default judgment against Sioux Chief; the court also barred Sioux Chief from presenting evidence at the damages hearing. Sioux Chief raises four points on appeal: (1) the court erred in granting Washington's motion for sanctions because there was insufficient evidence of deliberate disregard by Sioux Chief, Washington suffered no prejudice from the alleged discovery violations, and the sanctions ordered were excessive; (2) the court erred in precluding Sioux Chief from participating in the

damages hearing because the court wrongly believed that its entry of a default judgment required the preclusion and the preclusion was excessive; (3) the court erred in denying Sioux Chief a jury trial on damages because Sioux Chief did not waive its right to a jury trial; and (4) the court erred in exceeding the statutory damages cap of $500,000 under the MHRA. Because the trial court plainly erred in awarding damages in excess of the statutory cap, we reverse that part of the judgment and remand for entry of a new damage amount within the statutory cap. The judgment is affirmed in all other respects.

**Background**

On April 16, 2018, Sioux Chief hired Washington as a temporary worker at Sioux Chief's manufacturing and distribution facility in Kansas City, Missouri. On Washington's second day on the job, a coworker began inviting her to meals and to his home, saying he wanted to "hit that" and to lick her, among other sexual comments and gestures. The coworker would stare at Washington and rub up against her, making her very uncomfortable. The behavior occurred on a daily basis, and Washington reported the coworker to his supervisor, who did nothing. Washington then reported the coworker to the warehouse supervisor and asked if she could be moved to a different area away from the coworker. That supervisor was able to get Washington moved to a different area, but it did not deter her coworker, and the harassment continued. Washington reported her coworker again to the warehouse supervisor who told her to report to someone else. Washington then reported the coworker's behavior to her direct supervisor in the trucking department where she had been transferred. The trucking supervisor indicated he would try to keep the coworker away from Washington, but nothing changed, so she complained again to the trucking supervisor. Despite Washington's repeated complaints, nothing improved; instead, it became worse, as the trucking supervisor also began harassing her, making sexually explicit comments about her breasts

2

and male erections. Washington attempted to contact yet a different supervisor but was unable to do so, and she was then terminated.

Washington filed a Charge of Discrimination with the Missouri Commission on Human Rights (MCHR) on October 18, 2018, alleging discrimination on the basis of sex and retaliation by Sioux Chief. Washington received a right-to-sue letter from the MCHR on July 30, 2019, and filed a petition in circuit court against Sioux Chief on October 8, 2019.

Sioux Chief filed an answer to Washington's petition and simultaneously filed a cross-claim petition against PayDayz Staffing Solutions, Inc., the temporary staffing agency through whom Washington acquired her job at Sioux Chief. During the discovery process, Washington sent interrogatories and requests for production to Sioux Chief on November 4, 2019. The underlying dispute revolves around the following interrogatory and request for production and Sioux Chief's respective responses sent on February 6, 2020:

> INTERROGATORY NO. 11: Identify – by name, last known address, and last known telephone number – all persons who have made or filed any charges, lawsuits, complaints, or allegations of sexual harassment, sex discrimination, or retaliation against you or any of your employees, during January 1, 2015 to present; for each such person: a) describe the nature and substance of each charge, lawsuit, complaint, or allegation made by the person; and, b) state the date(s) on which the person made or filed each charge, lawsuit, complaint, or allegation.
>
> ANSWER: Objection. This request is overly broad and unduly burdensome in that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiver of said objection, Defendant states, none.
> . . .
>
> REQUEST FOR PRODUCTION NO. 11: Documents relating to any charges, lawsuits, complaints, or allegations of sexual harassment, sex discrimination, or retaliation that were made or filed against you or any of your employees during the time period January 1, 2015 to present.
>
> RESPONSE: Objection. This request is overly broad and unduly burdensome in that it seeks information that is not relevant nor reasonably calculated to lead to the

3

discovery of admissible evidence. Without waiver of said objection, Defendant states: none.

Sioux Chief claimed to have interpreted these discovery requests as limited to "seek[ing] information relating to any charges or lawsuits against Sioux Chief"; it failed to acknowledge that the requests also sought information about *complaints* and *allegations* of sexual harassment, sex discrimination, or retaliation that may not have resulted in legal action.

Washington sent more than six golden rule letters to Sioux Chief over its objections and refusal to produce documents. Washington then filed two motions to enforce discovery, with the second motion being based on the requested "me too" evidence sought in Interrogatory No. 11 and Request for Production No. 11. Sioux Chief responded that, "[u]pon entry of a protective order which [Sioux Chief] will forward to [Washington] forthwith, [Sioux Chief] will provide supplemental interrogatory answers and documents which should moot the parties' dispute as to these Interrogatories." On May 21, 2020, the court granted Washington's first motion to enforce and ordered Sioux Chief to "provide complete responses and documents to [Washington's] First Request for Production of Documents and First Interrogatories within ten (10) days from the date of this order." The court further ordered that the "discovery responses and documents to be produced shall be subject to a Protective Order prepared by [Sioux Chief] and submitted to the Court on the same day the discovery is provided to [Washington]." The court denied the second motion as moot.

Despite the court order, Sioux Chief refused to provide supplemental written discovery responses, failed to provide a complete document production, and refused to file the Protective Order as ordered by the court on May 21, 2020. Sioux Chief also repeatedly made false representations regarding intended compliance in response to Washington's golden rule letters.

4

Accordingly, on July 8, 2020, Washington filed a motion for sanctions, seeking to strike Sioux Chief's pleadings. The court denied the motion.

On August 28, 2020, Washington filed another motion to enforce discovery, noting again that Sioux Chief continued to limit its responses to Interrogatory No. 11 and Request for Production No. 11 to matters involving lawsuits and litigation and failed to respond as to whether any other internal complaints or investigations existed. The court granted Washington's motion, in part, noting specifically with respect to Sioux Chief's responses to Interrogatory No. 11 and Request for Production No. 11 that "Unsworn statements are insufficient." The court noted that failure to comply with the order could result in monetary sanctions.

On March 23, 2021, Washington deposed Sioux Chief's corporate representative and director of human resources William Barry. During that deposition, Barry indicated that, as part of his job duties, he had investigated complaints of sexual harassment in the past six years, but he could not identify how many. When asked if he had "made any effort prior to th[e] deposition . . . to look for records or talk to people or review any other information to determine any of the specifics about those complaints that [he had] investigated and whether any documentation exists related to those complaints," Barry indicated that, despite the ability to do so, he had not. When asked about the responses to Interrogatory No. 11 and Request for Production No. 11, Barry stood by the original response of "none" on the ground that "There were no lawsuits."

On April 16, 2021, six weeks before trial and two weeks before the scheduled close of discovery, Washington filed a second motion for sanctions, noting that sworn testimony from Sioux Chief's corporate representative established that Sioux Chief "engaged in a pattern of continually and willfully failing to provide information in discovery and ignoring and violating the Court's prior discovery orders." Washington requested that the court strike Sioux Chief's

pleadings and enter a default judgment. Sioux Chief filed a response on May 3, 2021, identifying three employees against whom complaints had been filed, but it again failed to identify who or how many people had filed complaints, as called for in the discovery requests.

On May 10, 2021, the court granted Washington's motion for sanctions, struck Sioux Chief's pleadings, entered a default judgment against Sioux Chief, and set the matter for a damages hearing eleven days later. Two days before the scheduled damages hearing, Sioux Chief filed a motion to reconsider, modify, set aside, or vacate the default judgment and sought clarification as to what Sioux Chief would be allowed to do with respect to the damages hearing. More specifically, Sioux Chief complained, "There is no description of whether Defendant can call witnesses at the hearing on May 21, 2021. There is no clarification of how, if Defendant requests it, a jury will be called to determine the outstanding damages issue." In response, the court entered an order prohibiting Sioux Chief from presenting evidence at the damages hearing.

The court held the damages hearing as scheduled on May 21, 2021, and Sioux Chief did not appear. Following the damages hearing, the court entered judgment in favor of Washington and awarded the following amounts:

1. Lost wages in the amount of $58,649.88;

2. Compensatory damages for emotional distress, mental anguish, and humiliation in the amount of $150,000.00;

3. Compensatory damages for deprivation of civil rights in the amount of $25,000.00;

4. Punitive damages in the amount of $500,000.00;

5. Attorneys' fees and costs in the amount of $207,636.14; and

6. Court costs in the amount of $4,736.06.

Two days later, the court entered an order denying both Sioux Chief's motion to reconsider the default judgment and Sioux Chief's request to file an answer and affirmative defenses. The court noted that Sioux Chief "engaged in a pattern of repeated disregard of the obligation to comply with the rules of discovery, . . . demonstrated a contumacious and deliberate disregard for the authority of the trial court[,] and [Washington] was prejudiced, thereby." Sioux Chief filed no authorized post-trial motions.

Sioux Chief filed a notice of appeal on August 6, 2021. Following notice from this court that the appeal may be untimely, Sioux Chief filed, on August 23, 2021, a motion for late notice of appeal, which this court granted on August 30, 2021.

**Analysis**

Sioux Chief raises four points on appeal. First, it challenges the court's decision to impose discovery violation sanctions in the form of stricken pleadings and entry of a default judgment. Second, it argues that the court erred in barring Sioux Chief from participating in the damages hearing. Third, it claims that the court violated Sioux Chief's right to a jury trial on damages. And, finally, it argues that the court erred in awarding damages in an amount that exceeds the statutory cap under the MHRA.

I. **The trial court did not abuse its discretion in entering sanctions against Sioux Chief for its repeated discovery violations.**

In its first two points on appeal, Sioux Chief challenges the court's entry of sanctions in response to Sioux Chief's repeated discovery violations. "Sanctions may be awarded if 'a party fails to answer interrogatories or file objections thereto within the time provided by law' or 'fails to produce documents and tangible things as requested under Rule 58.01.'" *Goodsell v. Noland*,

7

540 S.W.3d 394, 403 (Mo. App. W.D. 2018) (quoting Rule 61.01(b), (d)).[1] "Sanctions may include the following orders: (1) striking pleadings or parts thereof and (2) entering default judgments." *Id.* (citing Rule 61.01(b)). "When a party fails to produce documents, the court may also enter an order 'refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibit the disobedient party from introducing designated matters in evidence.'" *Id.* (quoting Rule 61.01(d)(1)).

"The circuit court is vested with 'broad discretion in administering the rules of discovery and in determining the proper remedy—including sanctions—for a party's non-compliance with the rules of discovery.'" *Lewellen v. Universal Underwriters Ins. Co.*, 574 S.W.3d 251, 271 (Mo. App. W.D. 2019) (quoting *Frontenac Bank v. GB Invs., LLC*, 528 S.W.3d 381, 390 (Mo. App. E.D. 2017)). "Our '[r]eview is limited to determining whether the [circuit] court could have reasonably concluded as it did, not whether [we] would have imposed the same sanctions under the same circumstances.'" *Id.* (quoting *Karolat v. Karolat*, 151 S.W.3d 852, 857 (Mo. App. W.D. 2004)). "Additionally, we will not disturb the circuit court's imposition of discovery sanctions unless we find the court abused its discretion." *Id.* "A ruling constitutes an abuse of discretion when it is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (quoting *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015)).

In Point I, Sioux Chief challenges the court's decision to strike its pleadings and enter a default judgment, claiming that there was no evidence of deliberate disregard of the court's orders,

---

[1] All rule references are to the Missouri Supreme Court Rules (2021) unless otherwise noted.

8

that Washington suffered no prejudice from the alleged violations, and that the sanctions were excessive. We disagree.

Though "[d]efault is an unforgiving punishment, . . . it is properly invoked in cases[] 'where the record sufficiently shows[] (1) the disobedient party engaged in a pattern of repeated disregard of the obligation to comply with the rules of discovery, i.e., the party has demonstrated a contumacious and deliberate disregard for authority of the trial court; and (2) the opposing party was prejudiced thereby.'" *Id*. at 271-72 (quoting *Frontenac Bank*, 528 S.W.3d at 390).

The trial court entered the following, highly detailed findings in support of its decision to strike Sioux Chief's pleadings and enter a default judgment:

> Defendant, Sioux Chief ('Defendant') has misle[d] Plaintiff, Marilyn Washington ('Plaintiff') and the Court by providing evasive, incomplete and false responses to Interrogatory No. 11, and by failing to search for and produce documents and information in response to Request for Production No. 11, in violation of Rule 61 and the Court's prior orders. . . .

> Plaintiff served discovery to Defendant, on February 6, 2020. On April 24, 2020, Plaintiff filed her First Motion to Enforce Discovery wherein Plaintiff alleged that Defendant failed to produce any documents in response to Plaintiff's requests for production for six months and refused to provide any substantive response to Plaintiff's informal efforts to resolve the discovery issues presented by her motion. On April 27, 2020, Plaintiff filed a Second Motion to Enforce Discovery, specifically as to Interrogatory No. 11 and Requests for Production No. 11, referenced above. Defendant's only response to said discovery was, "none."

> On May 21, 2020, the Court granted Plaintiff's First Motion to Enforce Discovery and ordered Defendant to provide complete responses and documents to Plaintiff's First Request for Production and First Interrogatories within ten (10) days. The Court further ordered that said discovery would be the subject of a Protective Order to be prepared by Defendant. In light of the Court's order as it related to Plaintiff's First Requests for Production and First Interrogatories, including Interrogatory No. 11 and Request for Production No. 11, the Court denied Plaintiff's Second Motion to Enforce Discovery as moot.

> On July 10, 2020, Plaintiff filed a Motion for Sanctions ('First Motion for Sanctions'), arguing that Defendant failed to provide supplemental discovery responses and a complete document production. On July 20, 2020, Defendant filed

9

its opposition and represented to Plaintiff and the Court that its previous discovery responses were complete and there was no need to provide supplemental responses. With respect to Interrogatory No. 11 and Requests for Production No. 11, which sought the information related to other complaints of harassment, discrimination and retaliation, Defendant again represented to the Court that its responses were complete and "[t]here is nothing else to say."

On July 27, 2020, Plaintiff filed Reply Suggestions in Support of her First Motion for Sanctions. Plaintiff's Reply explained that Defendant still had not provided supplemental discovery responses, expressing concern that Defendant had given evasive or incomplete responses by unilaterally limiting its responses to Interrogatory No. 11 and Request No. 11 to only disclose charges of discrimination and lawsuits that had been filed against Sioux Chief, and excluding any internal complaints of harassment, discrimination, and retaliation.

On July 31, 2020, the Court denied Plaintiff's First Motion for Sanctions. Plaintiff had also filed a Motion for Reconsideration, on July 31, 2021 asserting again that Defendant had not provided supplemental discovery responses or a complete document production, in accordance with the Court's First Discovery Order. On August 17, 2020, Defendant filed a response, again representing to the Court that there were no other complaints responsive to Plaintiff's requests. Specifically, Defendant stated:

> Regarding other complaints, <u>there are none</u>. Sioux Chief treats its employees fairly. As a result of this and despite being in business for several decades, it remains virtually litigation free. This was confirmed in a separate email to counsel long before any motion for enforcement much less any motion for sanctions was ever filed. *See Exhibit A, Brown 5/27/20 email to Defense counsels*. This email is important because Defense counsel wrote to Plaintiff's counsel in an attempt to avoid any discovery issues at all and to explain that even if and when documents would be produced, "there isn't much there." Defense counsel has repeated this refrain throughout the case. Plaintiff continues to refuse to accept it.

(emphasis added).

In the Reply, filed August 24, 2020, Plaintiff again argued her concern over Defendant's evasive and narrow interpretation of said discovery requests thereby excluding internal complaints. On this same day, the Court issued an Order denying Plaintiff's motion for reconsideration. The Court pointed out that it had not considered Plaintiff's reply suggestions in support of her First Motion for Sanctions when ruling on the motion, but after reviewing Plaintiff's Reply, it appeared that Defendant had not provided complete responses as directed by the Court's first discovery Order. Because Plaintiff only provided two[] "examples of

non-compliance[,]" the Court instructed Plaintiff to file a Third Motion to Enforce Discovery, specifying which interrogatories or requests for production had not been complied with. The Court further cautioned Defendant that its July 31, 2020 Order denying Plaintiff's First Motion for Sanctions "should not be interpreted to mean the parties do not have an ongoing duty under Rule 56.01(6)(e) . . . 'seasonably to amend a prior response to an interrogatory, requests for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'"

On August 28, 2020, Plaintiff filed her Third Motion to Enforce Discovery, specifically arguing that Defendant had not produced internal complaints of discrimination, harassment, or retaliation in response to Interrogatory No. 11 and Request for Production No. 11, and that Defendant had failed to provide supplemental discovery responses to inform Plaintiff whether any such complaints existed, in violation of the Court's first discovery Order.

On September 8, 2020, Defendant filed its opposition, representing to the Court for the fourth time, that there were no complaints responsive to Interrogatory No. 11 and Request for Production No. 11: "Defendants [sic] have not filed a supplemental answer to Interrogatories and Request No. 11, because Defendant has stated on the record at least 3 times that the answer is none . . . and it remains none." The same day, Defendant served supplemental discovery responses, but the responses to Interrogatory No. 11 and Request for Production No. 11 remained unchanged and continued to state Defendant had no document or information in response to those discovery requests.[]

On November 10, 2020, the Court entered its Order granting Plaintiff's Third Motion to Enforce Discovery ("Second Discovery Order"). The Court again ordered Defendant to provide "complete and full responses and documents" to the discovery requests that were the subject of Plaintiff's Third Motion to Enforce Discovery, including Interrogatory No. 11 and Request for Production No. 11. The Court warned Defendant that the failure to do so could result in sanctions.

On December 18, 2020, Defendant served its second supplemental discovery responses. Despite the Court having twice-ordered Defendant to provide complete responses to Interrogatory No. 11 and Request for Production No. 11, which were *de facto* findings that the information and documents sought by these requests were discoverable, Defendant continued to object[] that the requests were "overly broad["] and "unduly burdensome" and sought information "that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence." Defendant again only provided a one-word answer "subject to" its previously overruled objections, "none." These supplemental interrogatory answers were

signed under oath by William Barry, Director of Human Resources, on behalf of Defendant.

In March 2021, Plaintiff deposed William Barry as Defendant's corporate representative. The deposition notice required Mr. Barry to testify about other complaints of "gender discrimination, sexual harassment, and retaliation made by any employee from January 1, 2015 to present."[] This topic is essentially the same as Interrogatory No. 11, and what the Court had already ordered Defendant to respond to and produce.

Mr. Barry testified that other complaints of sexual harassment did exist and that he had personally investigated at least some of those complaints himself. Mr. Barry's testimony revealed that despite being aware of the Court's discovery orders, he made no effort to search for the information and documents Defendant was ordered to produce, and that no one else at Sioux Chief had either.

Although being designated as the representative for Defendant, Mr. Barry did not come to the deposition prepared to identify the names of any of the employees who complained of sexual harassment and could not testify as to the number of complaints made during the time period covered by Plaintiff's requests.

After Mr. Barry's testimony, Defendant did not supplement its discovery responses to provide information on any other complaints or take any proactive steps to address or correct the previous misrepresentations made to Plaintiff and the Court, despite Defendant's duty to do so, under Supreme Court Rules.

On April 16, 2020, Plaintiff filed her Second Motion for Sanctions. Plaintiff argued that in light of Mr. Barry's testimony, Defendant failed to comply with the Court's First and Second Discovery Orders, failed to search for and produce critically relevant information, and set forth how Plaintiff was prejudiced thereby. Plaintiff further argued that because of the repeated violations and recalcitrance, and the incurable prejudice, Plaintiff requested that the Court strike Defendant's pleadings, among other sanctions.

On April 26, 2021, the tenth day for filing a response, Defendant instead, filed a Motion for Extension of Time to Respond to Plaintiff's Second Motion for Sanctions. The Court granted Defendant's motion to respond by May 3, 2021, warning Defendant, that no additional requests for time would be granted and that failure to timely respond would result in further sanctions.

On May 3, 2021, Defendant filed its opposition, offering a variety of reasons for failing to comply with the Court's discovery orders, [including] but not limited to:[] that Mr. Barry "may not have completely understood" the discovery requests, that, "Defendant's failure to produce this information previously can be explained by Mr. Barry's misunderstanding of Plaintiff's compound discovery requests, that

Defendant could not provide a response to Interrogatory No. 11 and Request for Production No. 11 without reviewing every employee file, and that there was no need to conduct a review for responsive information because all complaints would supposedly go to Mr. Barry directly. Defendant further claimed that there is still, "ample time to gain discovery . . . if it chooses to do so." Defendant now concedes to the existence of said discovery. At this point in time, the trial is now just four weeks away.[]

Plaintiff's Interrogatory No. 11 and Request for Production No. 11 were the subject of four prior discovery-related motions, yet at no time before Plaintiff's Second Motion for Sanctions did Defendant ever argue that the scope of Plaintiff's requests was vague or that the requests did not cover internal complaints. Defendant never expressed any confusion or sought clarification from the Court regarding the Court's orders concerning this discovery, suggesting that Defendant understood what was being sought by Plaintiff.

Discovery was served on Defendant on February 6, 2020, some fifteen months from Defendant's response on May 3, 2021. The discovery requested was relevant and material to the underlying claims made by Plaintiff. Complaints of discrimination made by other employees are routinely sought in discovery in cases alleging discriminatory employment practices. Defendant's *post hoc* confusion is nothing more than an attempt to excuse its blatant disregard for the Court's discovery orders.

The Court is also unpersuaded by the argument that Defendant should not be required to disclose the information because it does not store the information in a readily retrievable format. Again, this argument was never made by Defendant in previous responses and seems only to be raised after disclosure of the existence of said discovery had been exposed. At no time since, April 24, 2020, when this discovery dispute began, was the Court ever advised of such system and process difficulties of a corporation such as Sioux Chief. The truthfulness of such an excuse is called into question.

Contrary to Defendant's claim that it is impossible to retrieve documents, Defendant argues that no search for responsive complaints was necessary because all such complaints would necessarily be within the purview of Mr. Barry's memory, [an argument that] is specious at best. Defendant had an obligation to search for and provide all responsive information and documents in its possession, custody, or control, and not be limited to Mr. Barry's recollection. Even [assuming] that every employee complaint of sexual harassment or discrimination made against Sioux Chief would be kept by Mr. Barry or that his memory is a reliable repository of all such complaints, seems ludicrous. At Mr. Barry's deposition, Plaintiff points out that Mr. Barry could not remember how many complaints he investigated or the identities of the employees who complained. Mr. Barry's inability to recall these events, provides even more reason for Defendant to conduct a diligent search of its

records and interview others within the organization to meet its discovery obligations. Defendant's failure to comply with discovery was unreasonable and demonstrates a deliberate disregard for its discovery obligations and this Court's discovery orders, in violation of Mo. Sup. Court Rule 61.

After Plaintiff's Second Motion for Sanctions was filed, Defendant claimed that it could only locate three other complaints of discrimination responsive to Interrogatory No. 11 and Request for Production No. 11. Defendant claims that these complaints show that Sioux Chief takes discrimination complaints seriously and are helpful to its defense, suggesting that it would not purposefully withhold them. Such a statement begs the question, then why didn't Defendant supplement its responses to discovery? Plaintiff argues that the only documents recently produced were redacted to conceal the identities of witnesses.

Defendant's conduct by disclosing some documents after another motion for sanctions has been filed does not smack of a good faith mistake but of a conscious decision to not comply with the rules of discovery and a deliberate disregard for this court's orders. Defendant obstructed meaningful discovery when it chose to deny the existence of any discovery related to prior claims of harassment, discrimination and retaliation, throughout the course of discovery and then only when outed by its own witness and subjected to another motion for sanctions, does Defendant disclose redacted documents of three claims at the eleventh hour.

The Missouri Supreme Court has characterized evidence of prior complaints of harassment, discrimination and retaliation as being "highly logically relevant." *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 125 (Mo. banc 2015). Since April, 2020, Defendant represented at least five times, to the Court and to Plaintiff that there were no complaints of harassment, discrimination or retaliation in the time period covered by Plaintiff's discovery request. When Mr. Barry disclosed the existence of prior claims and only after the second motion for sanctions was filed, did Defendant ever concede that complaints existed. Discovery is the necessary tool for all parties to seek information and collect evidence in preparation for trial. No party should be toyed with, strung along and frustrated by the gamesmanship that was played by Defendant in this case. Defendant's conduct impaired Plaintiff's discovery efforts and trial preparation.

As Plaintiff argued in her motion for sanctions, discovery related to other complaints materially impacts, at a minimum, the following discovery efforts and trial preparation plans: additional requests for production, additional interrogatories, requests for admission, witnesses to search for, witnesses to subpoena, witnesses to depose, witnesses to call at trial, evidence at trial and themes at trial, and claims the Plaintiff can submit at trial, including claims for punitive damages. By being deprived of opportunity to conduct discovery, Plaintiff was also deprived of the opportunity to obtain evidence to support her claims and

develop themes and strategies to use at trial. Plaintiff sufficiently established Defendant's repeated disregard of its obligations to comply with the rules of discovery and has shown that Plaintiff was prejudiced thereby.

Further, Defendant provided no evidence of what efforts it undertook, if any, to attempt to comply with the Court's discovery orders, other than counsel's conclusion that an "exhaustive search of employee files" was conducted. Counsel's conclusory statement, along with Mr. Barry's non-compliance with the notice of deposition and his admission that he had not done anything in preparation for his deposition, does not convince the Court that Defendant conducted an adequate investigation to locate and produce the discovery sought by Plaintiff.

Defendant repeatedly violated Rule 61 and this Court's orders for [the] better [part] of a year and waited until another motion for sanctions was filed against Defendant, to reveal the existence of three complaints. What little discovery that has been provided at this late date is incomplete/redacted information and documents. Plaintiff has been deprived of any meaningful opportunity to use information about other complaints in discovery, trial preparation, and trial.

As a result, on May 10, 2021, the Court granted Plaintiff's Second Motion for Sanctions, finding that Defendant intentionally failed to comply with the Court's May 20, 2020 Order, causing prejudice to Plaintiff. The Court struck Defendant's pleadings and entered an Order finding Defendant in default. The Court set a hearing for May 21, 2021 to determine Plaintiff's damages and attorneys' fees.

In its brief, rather than challenge any of the exceptionally detailed findings made by the trial court in support of its order, Sioux Chief argues that its discovery violation was not intentional insofar as it was based on a misunderstanding of what the discovery requests sought, and Sioux Chief faults Washington and the trial court for failing to clarify. Sioux Chief's argument, however, is based on the idea that its interpretation of Interrogatory No. 11 and Request for Production No. 11 (that information sought was limited to complaints resulting in legal action) was a reasonable one. We see nothing reasonable about it, as it is contrary to the plain language of the requests, and this interpretation was repeatedly dispelled by both Washington's filings and the court's orders. And Sioux Chief's claim that Washington was not prejudiced is based on the fact that its disclosure involved only three individuals and Washington allegedly had sufficient time to

15

investigate them; but this argument ignores the fact that the three identified individuals were the *subjects* of complaints rather than individuals *filing* complaints, which was what the discovery requests sought. In short, we see no abuse of discretion whatsoever in the trial court's decision to strike Sioux Chief's pleadings and enter a default judgment.

The dissent argues that we should reverse the trial court's sanctions because they were based on two allegedly mistaken factual findings by the trial court:

> (1) . . . the court ordered Sioux Chief to provide fuller responses to Interrogatory 11 for the first time in May 2020, in response to Washington's First Motion to Enforce Discovery; and (2) . . . Sioux Chief . . . concealed its narrow interpretation of Interrogatory 11 for almost fifteen months, from February 2020 (when it initially responded to Interrogatory 11), until May 2021 (when it responded to Washington's Second Motion for Sanctions).

Sioux Chief does not argue that the trial court made a material mistake in fact, and, contrary to the dissent's conclusion, the trial court was not mistaken in these findings.

With respect to the first alleged mistake of fact, the dissent's analysis relies on viewing Washington's two motions to enforce in isolation from one another. But this ignores that the two motions were filed close in time, that Sioux Chief filed a joint response to the motions, and that the trial court took up both motions and ruled them at the same time. Though it is true that the trial court granted Washington's first motion to enforce and denied her second motion to enforce (where the response to Interrogatory No. 11 was first challenged), the reason the court denied the second motion was because the relief requested in the second motion was rendered moot by the court's award of relief on the first motion. In response to the first motion, the court ordered Sioux Chief "to provide *complete* responses and produce documents to Plaintiff's First Request for Production of Documents and First Interrogatories." (Emphasis added.) The relief was directed at Sioux Chief's responses *as a whole* to the first request for production of documents and the first

16

interrogatories, which required Sioux Chief to provide fuller responses to Interrogatory No. 11, as it was part of both identified discovery requests. Thus, contrary to the dissent's suggestion, the denial of the second motion to enforce was not a rejection of Washington's challenge to Sioux Chief's responses to Interrogatory No. 11; rather, it was a recognition that the relief sought had already been granted in response to the first motion to enforce. Accordingly, the trial court's assertion that it ordered fuller responses to Interrogatory No. 11 in May 2020 is accurate and *not* a mistake of fact as the dissent suggests. Characterizing the trial court's assessment of what its own language meant in the denial of the second motion to enforce as a mistake is simply incorrect. As it was the trial court who ruled the second motion to enforce moot, it is the trial court who is in the best position to identify the basis for that ruling.

The real question is whether the trial court's order addressing the first and second motions to enforce was so unclear as to make it an abuse of discretion to sanction Sioux Chief for its failure to provide full responses to Washington's Interrogatory No. 11 and Request for Production No. 11. Under our standard of review, we will not find an abuse of discretion unless the ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 596 (Mo. banc 2017) (quoting *Lewellen v. Franklin*, 441 S.W.3d 136, 149 (Mo. banc 2014)). Though the court could have explained its reasoning more thoroughly in the denial of the second motion to enforce, Interrogatory No. 11 and Request for Production No. 11 clearly required Sioux Chief to provide information about not only other formal lawsuits and administrative complaints but also informal allegations of misconduct by Sioux Chief employees. There was nothing about the trial court's May 2020 discovery order that relieved Sioux Chief of its obligation to provide complete answers to these discovery requests. Although

17

Sioux Chief's incomplete discovery responses were signed by its legal counsel, at oral argument Sioux Chief's appellate counsel acknowledged that he understood Interrogatory No. 11 and Request for Production No. 11 requested informal allegations and charges. Yet, for fifteen months, Sioux Chief failed to fully respond to these requests.

With respect to the second alleged mistake of fact, the dissent suggests that "Sioux Chief explicitly – and repeatedly – stated its position that Interrogatory 11 sought information concerning _only_ formal lawsuits or administrative complaints." But it is the dissent's suggestion of clarity, rather than the court's identification of obfuscation, that is inaccurate. In **none** of Sioux Chief's multiple responses before May 2021 did it ever claim that the information sought in Interrogatory No. 11 was _limited_ to formal lawsuits or administrative complaints. In fact, contrary to the dissent's suggestion, the word "only" does not appear **at all**. Instead, Sioux Chief engaged in consistent and repeated _partial_ responses, wherein it responded to the portion of the Interrogatory seeking information about lawsuits but _failed to respond_ to the remaining requests regarding charges, complaints, or allegations. For example, Sioux Chief's initial response to Interrogatory No. 11 after its stated objection was simply, "none." Its response to the first/second motion to enforce discovery was, "Interrogatory No. 11 and Request No. 11 seek information regarding any prior lawsuits against Sioux Chief. The answer and response is none." Notably absent from that response was the word "only" or any indication that Sioux Chief believed the request was _limited_ to lawsuits. Indeed, its assertion that the request sought information regarding prior lawsuits was accurate, but it was also incomplete, as the request also sought information about charges, complaints, and allegations for which Sioux Chief provided _no_ answer whatsoever. And it was the lack of response to those requests that prompted Washington's repeated motions for enforcement and sanctions. As the trial court noted, it was not until Sioux Chief's response to

18

the second motion for sanctions in May 2021 that it raised anything close to saying that Interrogatory No. 11 was *limited* to lawsuits; and, even then, Sioux Chief merely characterized the requests as "imprecise": "Mr. Barry . . . answered truthfully to an imprecise question." Accordingly, contrary to the dissent's suggestion, the trial court's assertion that Sioux Chief concealed its narrow interpretation of Interrogatory No. 11 until May 2021 (when it was forced to acknowledge the interpretation as a result of Barry's testimony) is accurate and *not* a mistake of fact.

On this point, the dissent seems to suggest that, despite Washington's repeated motions seeking full and complete responses after receiving Sioux Chief's repeated *partial* responses, and despite Sioux Chief never claiming that the discovery request was limited, the court somehow should have understood Sioux Chief's responses to mean that Sioux Chief was merely misinterpreting the discovery requests, rather than being intentionally evasive (a fact dispelled by Sioux Chief's counsel at oral argument when he acknowledged that he always understood the requests to be broader than merely lawsuits). But, even if the court should have gleaned that Sioux Chief was merely misinterpreting the requests, rather than intentionally not responding to them, the purported interpretation cannot be described—under any standard—as good faith. It is clear from the court's assertion that Sioux Chief's "*post hoc* confusion is nothing more than an attempt to excuse its blatant disregard for the Court's discovery orders" that the court disbelieved the claimed misinterpretation anyway and likely would have disbelieved it regardless of when it was identified.

The dissent readily acknowledges that, "[i]f th[e identified] propositions were true, they might well support the circuit court's conclusion that Sioux Chief obstructed discovery

19

intentionally and in bad faith." Because the propositions are, in fact, true, the dissent's argument has no merit. Point I is denied.

In Point II, Sioux Chief argues that "[t]he trial court erred in precluding Sioux Chief from participating in the damages hearing as an additional discovery sanction," noting that, following the court's order "[t]he hearing . . . proceeded without Sioux Chief." But Sioux Chief conflates the concepts of participation and attendance. Though the court's order mentioned that Sioux Chief lacked authority to participate in the damages hearing as a result of its default, the court's order expressly defined that participation as precluding Sioux Chief "from presenting evidence at the damages hearing schedule[d] for May 21, 2021." The order did not bar Sioux Chief from attending or raising objections. It was Sioux Chief's choice to not appear or otherwise participate. When it failed to appear, it waived its opportunity to participate in *any* fashion, including objecting to the court's limit on its participation. *See, e.g., Treetop Vill. Prop. Owners Ass'n v. Miller*, 139 S.W.3d 595, 601 (Mo. App. S.D. 2004) (holding that "Appellants failed to appear at the hearing and thereby waived any right they may have had to complain about the fact that no record of the hearing was preserved"); *McMahan v. Mo. Dep't of Soc. Servs., Div. of Child Support Enf't*, 980 S.W.2d 120, 126 (Mo. App. E.D. 1998) (holding that "the State was given every opportunity to argue to the trial court that its position was substantially justified, and chose instead to waive that opportunity, by failing to appear at the May 15, 1997 hearing on plaintiffs' fee application"). As such, Point II is denied.

## II. Sioux Chief waived its right to a jury trial on damages by failing to appear at the damages hearing.

In its third point, Sioux Chief argues that the trial court violated its right to a jury trial on damages because Sioux Chief did not waive its right. We disagree.

20

"Although Missouri recognizes default as a harsh remedy, particularly where a judgment of default is issued on liability, a party maintains the right to have a jury determine the amount of damages." *Hoock v. SLB Acquisition, LLC*, 620 S.W.3d 292, 301 (Mo. App. E.D. 2021). But "[p]arties shall be deemed to have waived trial by jury . . . [b]y failing to appear at the trial." § 510.190.2(1).[2] Here, nothing precluded Sioux Chief from appearing at the damages hearing. It chose not to do so, and in so choosing, it waived its right to seek a jury trial on damages. Point III is denied.

## III.     The trial court plainly erred in awarding damages in excess of the statutory cap.

In its final point, Sioux Chief argues for the first time that the court erred in entering damages in an amount exceeding the cap imposed by § 213.111.4. But Sioux Chief never raised this claim with the trial court through an objection or a motion for new trial or a motion to amend the judgment.

"Generally, the failure to object . . . at trial precludes appellate review of the [issue]." *Sears v. Dent Wizard Int'l Corp.*, 13 S.W.3d 661, 665 (Mo. App. E.D. 2000). "Additionally, in order to preserve a point for appellate review, appellant has to raise the point in the motion for new trial," *id.*, if the matter was not "previously presented to the trial court." Rule 78.07(b). When an issue is "not properly preserved for appellate review, the only review, if any, would be for plain error, in accordance with Rule 84.13(c)." *Cohen v. Express Fin. Servs., Inc.*, 145 S.W.3d 857, 864 (Mo. App. W.D. 2004).

"Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). "In determining whether to exercise

---

[2] All statutory citations are to the Revised Statutes of Missouri (Cum. Supp. 2021).

its discretion to provide plain error review, the appellate court looks to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen*, 145 S.W.3d at 864.

"If[,] in applying this standard[,] the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps." *Id*. "First, the court must determine whether the trial court actually committed evident, obvious and clear error that affected substantial rights." *Id*. "[I]n the second step of reviewing for plain error, the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage of justice." *Id*. at 865.

"The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *Id*. (quoting *Messina v. Prather*, 42 S.W.3d 753, 763 (Mo. App. W.D. 2001)). "As a practical matter, we rarely resort to plain error review in civil cases." *Id*. "Furthermore, the plain error doctrine cannot be used to 'revive issues already abandoned by selection of trial strategy or oversight.'" *Id*. (quoting *In re Swearingen*, 42 S.W.3d 741, 746 (Mo. App. W.D. 2001)).

Section 213.111.4 limits the total amount of damages available to a plaintiff seeking relief to various amounts depending upon the number of employees employed by the defendant. In this case, it was undisputed that Sioux Chief employed more than 500 employees during the requisite time frame. For employers of that size, § 213.111.4(2)(d) limits the total damages to five hundred thousand dollars. The damages awarded below totaled $733,649.88, clearly in excess of the statutory cap.

22

Here, it appears that the error arose during the damages hearing when Washington's counsel advised the trial court that the statutory damages cap was an affirmative defense and, because Sioux Chief's pleadings were stricken, any affirmative defenses were no longer applicable:[3]

> [W]e would suggest that you double the compensatory damage award for punitive damages [assessed] which would mean $500,000 or more, $600,000 or more. And we do not believe – and we are going to file a brief after this hearing so that we don't take up more time today – if there's any cap on the compensatory damages or punitive damages the Court awards in this case, because caps are affirmative defenses and pleadings have been stricken, so none of the reductions come into play and the Court can enter a full award.

As mentioned above, Sioux Chief did not attend the damages hearing and, therefore, did not object to Washington's characterization of the damage cap as an affirmative defense. And, based on the amount awarded, it appears that the trial court accepted the representation that the damage cap is an affirmative defense. The trial court's acceptance, however, amounts to plain error.

Despite the confidence voiced by Washington at the damages hearing, whether the damage cap imposed in § 213.111.4 is an affirmative defense is still an open question in Missouri. The basis for Washington's argument that the cap is an affirmative defense is that the amount of the cap varies depending upon the number of employees the defendant has, and the defendant is in a better position to prove that number; thus, she reasons, it should be an affirmative defense that is waived if not properly raised. (There are no other specific facts to plead or prove associated with the damage cap.)

A major flaw with Washington's argument, however, is the fact that Washington pled in her petition that Sioux Chief had over 500 employees, and there is no reason to have so pled other than to ensure that any damages awarded would be within the highest cap available under the

---

[3] Sioux Chief did not raise the damages cap as an affirmative defense in its stricken pleadings.

23

statute.[4]  And Sioux Chief's stricken answer admitted that it had more than 500 employees.  But, if the damage cap is an affirmative defense, there would be no reason for Washington to have pled those facts in her petition.  And there are other reasons to believe that the damage cap in § 213.111.4 is *not* an affirmative defense.

"An 'affirmative defense' is '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 428 (Mo. banc 2016) (quoting *Black's Law Dictionary* 509 (10th ed. 2014)).  It "is a procedural tool 'that allows the defendant to defeat or avoid the plaintiff's cause of action and avers that even if the allegations of the petition are taken as true, the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid the legal responsibility alleged.'"  *Id.* (quoting *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012)).  Where a statute places limits on damage awards but does not otherwise allow a defendant "to avoid or defeat the legal liability alleged by [the plaintiff], it does not act as an affirmative defense."  *Id.* (addressing a statutory limit on post-judgment interest for medical negligence actions).  There is nothing in § 213.111.4 that would allow a defendant to avoid or defeat legal liability for employment discrimination based on sex; thus, it does not appear to be an affirmative defense under the Missouri Supreme Court's reasoning in *Dieser*.

While there are no decisions on the MHRA damages cap, there are decisions on the very similar Title VII damages cap in 42 U.S.C. § 1981a.  This statute allows non-economic and punitive damages in addition to backpay but also includes caps that vary based on size of the employer.  Daniel B. Tukel, *The Best Defense or A Good Offense?  Are the Damage Caps in 42*

---

[4] In order to fall within the scope of the MHRA, Washington needed to establish only that Sioux Chief had at least six employees.  § 213.010(8).

24

*U.S.C. S 1981a Waivable Affirmative Defenses?*, 24 Lab. Law 303, 303 (2009). Much like the MHRA, § 1981a is clear and unambiguous on its face regarding the caps, which suggests that a defendant has no obligation to say anything about the caps unless and until a verdict has been rendered that exceeds them. *Id*. at 304. But, as Washington alleges here, several plaintiffs have argued that the caps are an affirmative defense that must be pled or is waived. *Id*.

> Cases in which federal courts of appeal have found that a statutory damage cap is an affirmative defense that is waived if not timely asserted have two important elements in common: (1) The damage cap is found in a statute distinct from the authority on which the cause of action itself—whether statutory or common-law—was based and (2) the courts found that prejudice would result from allowing the late assertion of the statutory cap defense because it would prevent the plaintiff from having the opportunity to develop facts or present evidence that might mitigate or defeat the defense.

*Id*. at 311.

"Unlike other contexts in which the damage cap is found in a wholly separate statute, under section 1981a the limitation on damages is an integral part of the very same statute that permits non-economic and non-compensatory damages to be awarded." *Id*. at 316-17. "Therefore, it is not possible that a plaintiff claiming such damages under section 1981a would be surprised by the existence of the caps." *Id*. at 317. "Thus, a plaintiff would not be prejudiced if reliance on the section 1981a cap was asserted after the first responsive pleading or even post-trial." *Id*.

The same is true of the MHRA damage caps. The caps are found in § 213.111.4, while the right to damages, generally, is found in § 213.111.2: "The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual and punitive damages . . . ." Thus, a plaintiff would be hard-pressed to claim any surprise from a post-trial or post-verdict assertion of the caps. And this

is especially true in this case, where Washington was obviously aware of the caps as evidenced by her preemptive pleading of facts supporting the highest cap category.

"In addition to the inherent inability to show surprise, there is another distinction between section 1981a and other statutory damage caps." Tukel, 24 Lab. Law at 318. "One of the considerations in determining whether a defense must be raised affirmatively is which party has the better access to the information on which the defense would rest." *Id.* And "a plaintiff certainly has the better—indeed the only—access to whether or not she is seeking damages in excess of a statutory cap." *Id.* "It would seem counterintuitive to require a defendant to plead affirmatively that damages in excess of the section 1981a caps are precluded when there is no requirement that a plaintiff plead that she is seeking damages in excess of the caps—information that is exclusively within the plaintiff's control." *Id.*

The same is true under Missouri law as well: "If a recovery of money be demanded, no dollar amount or figure shall be included in the demand except to determine the proper jurisdictional authority, but the prayer shall be for such damages as are fair and reasonable." § 509.050.1(2). And, while the amount of damages being sought is discoverable, "[t]he response to such discovery shall not be used at trial by opposing parties for any purpose." § 509.050.2. Accordingly, it seems quite plain that the statutory damage caps under § 213.111.4 are not an affirmative defense. Thus, in accepting Washington's assertion, the trial court committed evident, obvious, and clear error.[5]

---

[5] Though Missouri courts frequently hold that a litigant's failure to alert the court of a claimed error "when the opportunity [first] presents itself is a waiver of the claimed error," *Pollard v. Whitener*, 965 S.W.2d 281, 290-91 (Mo. App. W.D. 1998), "[i]t seems logical that a statutory requirement applies automatically as a matter of law, and that it should not be necessary to plead reliance on the unambiguous language of a statute in order for it to be implemented." Daniel B. Tukel, *The Best Defense or A Good Offense? Are the Damage Caps in 42 U.S.C. S 1981a Waivable Affirmative Defenses?*, 24 Lab. Law 303, 318 (2009). "That is, if the statute says 'plaintiff can only recover $300,000 in punitive and non-economic damages,' a plaintiff should not become entitled to unlimited damages if a defendant fails to affirmatively plead that it relies on that unambiguous statutory language." *Id.* Generally, to establish

The only remaining question is whether a manifest injustice or miscarriage of justice is the result. We believe it is. *See, e.g., Ball v. Am. Greetings Corp.*, 752 S.W.2d 814, 820 (Mo. App. W.D. 1988) (granting plain error review and finding a manifest injustice where affirming "would . . . [1] allow a judgment for [improper damages] to stand in the face of a peremptory prohibition of statute, and hence to suffer a plain error to go uncorrected[; and 2] tolerate the manifest injustice of an illicit (albeit adventitious) boon of damages, and to forebear a miscarriage of justice."). Here, allowing the damages judgment below to stand would be contrary to the plain language of § 213.111.4 and provide Washington with "an illicit (albeit adventitious) boon of damages." Accordingly, Point IV is granted.

"Pursuant to Rule 84.14, when we believe that the trial court [erred], we may enter the judgment the trial court should have entered, making any necessary corrections or amendments." *In re Lindeman*, 140 S.W.3d 266, 272 (Mo. App. S.D. 2004). Sioux Chief contends that the damages award exceeded the statutory cap by $175,000. Though we agree with Sioux Chief as to the total amount of excess, we are unable to simply enter a new damages judgment because the trial court (as it should) identified very specific amounts for various kinds of compensatory and punitive damages.[6] Accordingly, we reverse the damages judgment and remand with directions that the trial court reduce the judgment by $175,000, as it sees fit.

---

a waiver, there must be some prejudice to the plaintiff from the defendant's failure to raise the issue in a timely fashion. *Id*. at 322. Here, there is no obvious prejudice to Washington from enforcing the caps despite Sioux Chief's failure to raise the issue below. Therefore, we cannot say that this claim is waived, even though it would have been preferable for Sioux Chief to raise this claim before appeal.

[6] Had this been a jury, rather than a bench trial, the jury would have been given verdict form MAI 38.10, "which requires the jury to individually list the dollar amount of damages it awards for each category of actual damages, back pay, past economic losses not including back pay, future economic losses, and non-economic losses." *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 744 (Mo. App. E.D. 2020). This form is necessary because § 213.111.4 "requires the court to determine the sum . . . of the separate categories of actual [and] punitive damages[] and adjust that amount to . . . not exceed actual back pay and interest on that back pay plus an additional amount of damages dependent upon the size of the company." *Dixson v. Mo. Dep't of Corr.*, 586 S.W.3d 816, 827 (Mo. App. W.D. 2019).

**Conclusion**

The trial court did not err in imposing discovery-violation sanctions in the form of striking Sioux Chief's pleadings, entering a default judgment, and barring Sioux Chief from presenting evidence at the damages hearing. The trial court did, however, plainly err in awarding damages in excess of the cap imposed by § 213.111.4. Therefore, we reverse the damages award and remand for the trial court to enter a new damages award that does not exceed the cap imposed in § 213.111.4. The judgment in all other respects is affirmed.[7]

_Karen King Mitchell_
Karen King Mitchell, Judge

Janet Sutton, Presiding Judge, concurs.
Alok Ahuja, Judge, dissents in separate opinion.

---

[7] "Under this Court's Special Rule 29, a party may file a motion for attorney's fees on appeal 'pursuant to contract, statute or otherwise.'" *Williams v. City of Kansas City*, 641 S.W.3d 302, 334 n.12 (Mo. App. W.D. 2021). Washington filed a motion for attorney's fees on appeal that we took with the case. Washington's underlying cause of action was brought pursuant to the Missouri Human Rights Act, which authorizes the court to "award court costs and reasonable attorney fees to the prevailing party." § 213.111.2. "This includes fees incurred on appeal from the trial court's judgment." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 58 (Mo. App. W.D. 2016). Because we are affirming the judgment in favor of Washington, her motion for costs and attorney's fees on appeal is granted. "Although appellate courts have authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Id.* (quoting *Turner v. Kansas City Pub. Schs.*, 488 S.W.3d 719, 726 (Mo. App. W.D. 2016)). Accordingly, we remand the cause to the trial court for the purpose of conducting a hearing to determine the reasonableness of the costs and fees requested and to enter an appropriate award.



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

MARILYN WASHINGTON, )
          Respondent, )
           ) **WD84714**
v. ) **(consolidated with WD84749)**
           )
SIOUX CHIEF MFG. CO., INC., ) FILED: December 20, 2022
          Appellant. )

## DISSENTING OPINION

I agree with the majority that the circuit court plainly erred by refusing to enforce the damages caps found in § 213.111.4, RSMo. As the majority holds, the damages awarded to Washington must be reduced to comply with the limits imposed by the General Assembly in Missouri Human Rights Act cases.

More broadly, I believe that the circuit court's judgment must be reversed outright, because the circuit court struck defendant Sioux Chief's pleadings as a discovery sanction based on a materially incorrect understanding of the relevant facts. It may be that Sioux Chief's conduct during discovery warranted the imposition of sanctions – even the drastic sanctions ordered by the circuit court. The circuit court could only properly exercise its discretion to impose sanctions, however, if it acted based on an accurate understanding of what had happened. Here, the circuit court's award of sanctions relied on a materially mistaken factual foundation. In these circumstances, we have no option but to reverse the sanctions award, and to remand for the circuit court to reconsider whether, and what,

sanctions are warranted based on an accurate understanding of this case's procedural history.

## Discussion

The circuit court struck Sioux Chief's pleadings as a discovery sanction, based on the court's view that Sioux Chief intentionally failed to provide complete responses to Washington's Interrogatory Number 11 and Request for Production Number 11. The interrogatory and document request are worded almost identically. They sought information, and documents, concerning "any charges, lawsuits, complaints, or allegations of sexual harassment, sex discrimination, or retaliation" made by any person against Sioux Chief, or against any of its employees, since January 1, 2015. I refer to the mirror-image interrogatory and document request collectively as "Interrogatory 11."

Sioux Chief contended in the circuit court that it interpreted Interrogatory 11 to refer only to formal administrative complaints and lawsuits, and that it responded accurately to Interrogatory 11 when it stated that no such formal complaints or litigation had been filed against it.

## I. The Circuit Court's Sanctions Decision Rests on Two Erroneous Factual Findings.

The circuit court's award of sanctions is fundamentally based on two erroneous factual propositions: (1) that the court ordered Sioux Chief to provide fuller responses to Interrogatory 11 for the first time in May 2020, in response to Washington's First Motion to Enforce Discovery; and (2) that Sioux Chief concealed its narrow interpretation of Interrogatory 11 for almost fifteen months, from February 2020 (when it initially responded to Interrogatory 11), until May 2021 (when it responded to Washington's Second Motion for Sanctions). If those propositions were true, they might well support the circuit court's conclusion that

2

Sioux Chief obstructed discovery intentionally and in bad faith. Unfortunately, neither of these critical factual findings is accurate.

The circuit court's interlocutory order granting discovery sanctions states a single basis for the award of sanctions against Sioux Chief: that it "has intentionally failed to comply with this Court's May 2[1], 2020 Order and has prejudiced the Plaintiff." LF1778/1. In its final judgment, the court stated that its May 21, 2020 order granting Plaintiff's First Motion to Enforce Discovery required Sioux Chief "to provide complete responses and documents to Plaintiff's First Request for Production and First Interrogatories within ten (10) days," "*including Interrogatory No. 11 and Request for Production No. 11.*" LF1789/3 (emphasis added). The judgment also asserted that the court had "twice-ordered [*sic*] [Sioux Chief] to provide complete responses to Interrogatory No. 11 . . ., which were [*sic*] *de facto* findings that the information and documents sought by these requests were discoverable." LF1789/6; *see also* LF1789/3 (contending that Sioux Chief "repeatedly violated the Court's orders"); LF1789/10 (stating that Sioux Chief "repeatedly violated Rule 61 and this Court's orders for better of [*sic*] a year").

The court's judgment also expressly found that Sioux Chief had concealed its narrow interpretation of Interrogatory 11:

> Plaintiff's Interrogatory No. 11 and Request for Production No. 11 were the subject of four prior discovery-related motions, yet *at no time before Plaintiff's Second Motion for Sanctions did Defendant ever argue that the scope of Plaintiff's requests was vague or that the requests did not cover internal complaints.* Defendant never expressed any confusion or sought clarification from the Court regarding the Court's orders concerning this discovery, suggesting that Defendant understood what was being sought by Plaintiff.

LF1789/7-8 (emphasis added). Elsewhere, the court stated that Sioux Chief revealed its interpretation of Interrogatory 11 "only when outed by its own witness and subjected to another motion for sanctions," and that it had "represented at least five times" that no informal charges or allegations of discrimination, harassment or

3

retaliation had been asserted against the company or its employees. LF 1789/9. The court asserted that "Defendant's *post hoc* confusion is nothing more than an attempt to excuse its blatant disregard for the Court's discovery orders." LF 1789/8.

**II.    The Circuit Court Did Not Address Interrogatory 11 in it May 2020 Discovery Order.**

The first lynchpin of the circuit court's sanctions decision is the court's belief that it ordered Sioux Chief to provide a more complete response to Interrogatory 11 on May 21, 2020, in response to Washington's First Motion to Enforce Discovery. The circuit court could only find that it had "*twice*" ordered Sioux Chief to supplement its responses to Interrogatory 11, and that Sioux Chief had "*repeatedly*" violated the court's discovery orders, because of the court's belief that its May 2020 order covered Interrogatory 11.

The circuit court's after-the-fact reading of its May 2020 discovery order is demonstrably incorrect. Washington's First Motion to Enforce Discovery did *not* challenge Sioux Chief's response to Interrogatory 11; instead, it only sought the production of documents in response to *other* discovery requests. This is made clear in the "golden rule" correspondence which Washington attached to the First Motion. Jackson County Rule 33.5.4 requires that a party moving to enforce discovery attached to their motion "[a] copy of the written communication" reflecting "a sincere attempt to resolve the differences relating to such motion." The "golden rule" correspondence attached to Washington's First Motion lists in detail the interrogatories and document requests – *thirty-one* in total – to which she claimed Sioux Chief had failed to fully respond. The parties' detailed "golden rule" correspondence does *not* address Interrogatory 11.

Washington later filed a <u>Second</u> Motion to Enforce Discovery, which explicitly addressed Sioux Chief's response to Interrogatory 11. The Second Motion attached an April 24, 2020 e-mail from Washington's counsel to Sioux Chief's counsel,

4

objecting to Sioux Chief's response to Interrogatory 11. This was the *first* – and apparently only – "golden rule" correspondence addressing Interrogatory 11. Notably, the April 24, 2020 email was *not* attached to Washington's First Motion.

Washington's First Motion explained that she was "seek[ing] production of documents responsive to [her] First Requests for Production and First Interrogatories." LF1700/1. The Motion explained that Sioux Chief had offered to produce documents under a protective order in response to numerous production requests and interrogatories, but had failed to follow through. LF1700/2. This was not Washington's complaint as to Interrogatory 11. Washington's complaint with Sioux Chief's response to Interrogatory 11 was different: as explained in Washington's Second Motion to Enforce Discovery, because Sioux Chief had stated that it was responding to Interrogatory 11 *subject to its objections*, "Plaintiff cannot discern whether Defendant has withheld information or documents pursuant to its objections." LF1704/3.

Washington filed consolidated Reply Suggestions in support of both motions to enforce discovery. Her Reply Suggestions make clear that her First and Second Motions to Enforce Discovery did not overlap, and instead addressed *different* discovery responses, based on *different* complaints. Washington explained:

> ***Plaintiff deliberately elected to file two separate motions because the issues raised in the motions are quite different*** and because Local Rule 32.2.5 limits motions regarding discovery to five pages.
>
> . . . .
>
> The **First Motion to Enforce** addresses Defendant's **failure to produce responsive documents**. Defendant represents that it has not produced documents based on its desire for a protective order. . . . As of the date of this filing, no proposed protective order has been provided by Defendant. A party should not be allowed to effectively "stay" discovery or hold responsive documents "hostage" simply because it desires a protective order.

5

> The **Second Motion to Enforce** seeks discovery . . . of individuals that have made or filed complaints, charges of discrimination, or lawsuits based on sexual harassment, sex discrimination, or retaliation during the period January 1, 2015 through present. (Interrogatory 11; Requests 11.) Subject to objections, Defendant responded "none."
>
> Defendant responds to the second motion by stating that the requests "seek information regarding any prior *lawsuits* against Defendant" and stating that the answer is "none" and that the issue is "moot." These discovery requests are not limited to "prior lawsuits." Rather, they seek discovery of other charges, lawsuits, complaints, allegations of sexual harassment, discrimination, retaliation.
>
> Because Defendant has answered "none" subject to objections, and because Defendant has described the requests as seeking only "prior lawsuits," Plaintiff cannot discern whether Defendant has withheld responsive information or documents.

LF1709/2-5 (first emphasis added).

Although Washington's First and Second Motions to Enforce Discovery raised separate issues involving different discovery, the circuit court's May 21, 2020 Order *granted* Washington's First Motion, but *denied* Washington's Second Motion "as moot."

Washington has argued that, although the circuit court's May 2020 order explicitly says that her Second Motion to Enforce Discovery is "**DENIED** as moot," the court *must have* ordered Sioux Chief to supplement its response to Interrogatory 11. Washington has emphasized that the court's May 21, 2020 Order stated that, by granting Washington's *First* Motion, the court was ordering Sioux Chief "to provide complete responses and produce documents to Plaintiff's First Request for Production of Documents and First Interrogatories." But the court's May 2020 Order must be read in light of the relief Washington *requested* in her First Motion – relief that did not address Interrogatory 11.

The circuit court's statement that Washington's Second Motion was "moot" may seem puzzling. In granting Washington's *First* Motion, however, the court had ordered Sioux Chief to provide supplemental responses to eight interrogatories, and

6

twenty-three document requests. The court's statement that Washington's Second Motion was "moot" may simply reflect the court's belief that, in light of the broad relief it had ordered in response to the First Motion, it was unnecessary to order Sioux Chief to supplement its responses to additional discovery requests.

The circuit court ordered Sioux Chief to supplement its response to Interrogatory 11 only once. And on that occasion, the court apparently required only that Sioux Chief's response be verified by a corporate employee. On August 28, 2020, Washington filed her *Third* Motion to Enforce Discovery. Like Washington's *Second* Motion, the Third Motion challenged Sioux Chief's response to Interrogatory 11. In their briefing on the Third Motion, the parties again disputed whether Interrogatory 11 was limited to formal lawsuits, or instead included informal, internal complaints or allegations.

On November 10, 2020, the circuit court granted Washington's Third Motion, but only "in part." The court's Order explained Sioux Chief's discovery obligations with respect to each discovery request for which the court ordered a supplemental response. The court's November 2020 Order stated in relevant part:

> Defendant, Sioux Chief shall provide complete and full responses and documents of [*sic*] the following discovery within twenty (20) days from the date of this order:
>
> 1. Interrogatory 10/First Request for Production of Documents 10: The spreadsheet provided by defendant is insufficient.
>
> 2. ***Interrogatory 11/First Request for production of Documents 11: Unsworn statements are insufficient.***
>
> 3. Interrogatory 20 and 21: In addition to the handbook, defendant shall provide any other disciplinary policies and procedures for all conduct-related matters, to and including attendance-related matters.
>
> 4. Request for Production 22: Defendant shall produce the one page report for employees, that includes the number of absences from work and the number of attendance points accrued during employment. (see, Plaintiff's exhibit A)

7

4.   Request for Production of Documents 23:  Defendant shall provide documents titled, "Disciplinary Action Reports."

LF1750/1-2 (emphasis added).

Thus, with respect to Interrogatory 11, the circuit court merely specified that "[u]nsworn statements are insufficient."  This responds to the following complaint made by Washington:

> While Defendant insists, in its responses to Plaintiff's motions, that it has no responsive documents [with respect to Interrogatory 11], it has not provided a supplemental written response with this information or a sworn signature page to verify such information. ***Plaintiff should not be required to accept an attorney's unsworn comment in motion papers***.

LF1747/3 (emphasis added).

Thus, on the one occasion on which it substantively addressed Sioux Chief's response to Interrogatory 11, the circuit court merely required that Sioux Chief provide a properly verified answer.  Notably, and although the parties continued to dispute whether Interrogatory 11 covered informal complaints or allegations, the circuit court did not actually decide the scope of Interrogatory 11 – the issue which formed the crux of the court's later sanctions ruling.  From the record, it appears that the court only expressly rejected Sioux Chief's interpretation of Interrogatory 11 *in its final judgment*, issued months after the court had stricken Sioux Chief's pleadings.

The circuit court's ruling on Washington's First Motion to Enforce Discovery did <u>not</u> address Sioux Chief's response to Interrogatory 11.  The circuit court's judgment is simply mistaken when it states that its ruling granting Washington's <u>First</u> Motion to Enforce "include[ed] Interrogatory No. 11 and Request for Production No. 11."  LF1789/3.  It is simply inaccurate – and unfair – for the circuit court, and now this Court, to interpret the May 2020 order as doing something it simply did not do.  In addition, it is inaccurate, and unfair, for the circuit court to

claim that it had "*twice*" ordered Sioux Chief to supplement its response to Interrogatory 11, and that Sioux Chief had "*repeatedly*" refused.

The claim that Sioux Chief flouted the circuit court's discovery orders multiple times, beginning in May 2020, is untrue, and cannot provide a basis to impose discovery sanctions.

## III. Sioux Chief Repeatedly Announced its Narrow Interpretation of Interrogatory 11.

The second critical basis for the circuit court's sanctions order was its conclusion that Sioux Chief had not disclosed its narrow interpretation of Interrogatory 11 until its response to Washington's second sanctions motion, after it had been "outed" by the deposition testimony of its Human Resources Director. According to the court, Sioux Chief's feigned "*post hoc* confusion" concerning the scope of Interrogatory 11 demonstrated its bad faith.

Contrary to the circuit court's factual findings, the record reflects that Sioux Chief explicitly – and repeatedly – stated its position that Interrogatory 11 sought information concerning *only* formal lawsuits or administrative complaints. Sioux Chief's openness on this point is confirmed by the fact that Washington repeatedly asked the circuit court to *reject* Sioux Chief's narrow interpretation, and instead construe Interrogatory 11 to apply to informal complaints and allegations, not just formal charges.

Sioux Chief explained its interpretation of Interrogatory 11 in its opposition to Washington's Second Motion to Enforce Discovery – the *first* motion which actually challenged Sioux Chief's response to Interrogatory 11. Sioux Chief responded that "Interrogatory No. 11 and Request No. 11 seek information regarding any prior lawsuits against Sioux Chief. The answer and response is none. Therefore, this issue is moot." LF1708/2 ¶ 9.

9

Washington clearly understood the gloss Sioux Chief was placing on Interrogatory 11, since she responded that "***[t]hese discovery requests are not limited to 'prior lawsuits.'*** Rather, they seek discovery of other charges, lawsuits, complaints, [and] allegations of sexual harassment, discrimination, [or] retaliation." LF1709/5 (emphasis added).

Sioux Chief repeated its interpretation of Interrogatory 11 in its opposition to Plaintiff's first motion for sanctions, filed on July 20, 2020 – almost ten months before the circuit court's sanctions order:

> Plaintiff seeks sanctions for, among other things, Defendant's failure to respond to Interrogatory No. 11 and Request No. 11. ***These respective discovery requests seek information relating to any charges or lawsuits against Sioux Chief.*** Sioux Chief responded to both discovery requests by stating that there are no such charges. This answer, like many others, is complete. There is nothing else to say and there is no way that Plaintiff could assume that Defendant has failed to fully comply with the Court's order as it relates to these discovery requests.

LF1718/2 (emphasis added).

Once again, Washington's response to Sioux Chief's memorandum leaves no doubt that the parties had an ongoing dispute as to whether Interrogatory 11 was limited to formal charges and lawsuits, or included informal, internal complaints or allegations:

> Defendant mischaracterizes the information sought by Plaintiff's Interrogatory No. 11 and Request for Production No. 11, in an apparent attempt to persuade the Court that i[t] has already complied with those requests. More specifically, Defendant represents to the Court that those discovery requests seek information and documents relating to "any charges or lawsuits against Sioux Chief" and that there are "no such charges," so there is nothing else to provide. ***The problem with Defendant's position, however, is that those requests are not limited to just "charges and lawsuits." They also seek complaints of sexual harassment and discrimination made by employees within the company***, and Defendant does not say whether any complaints of that nature exist, and has not provided

10

supplemental discovery responses from which the answer to that
question can be discerned.

LF1720/4 (emphasis added; record citation omitted).

Notably, the circuit court _denied_ Washington's first sanctions motion.
LF1719.

Washington filed a motion to reconsider the denial of its first sanctions
motion. In opposition, Sioux Chief repeated yet again its reading of Interrogatory
11:

> ***Regarding other complaints, there are none. Sioux Chief
> treats its employees fairly. As a result of this and despite being
> in business for several decades, it remains virtually litigation
> free***. This was confirmed in a separate email to counsel long before
> any motion for enforcement much less any motion for sanctions was
> ever filed. This email is important because Defense counsel wrote to
> Plaintiff's counsel in an attempt to avoid any discovery issues at all
> and to explain that even if and when documents would be produced,
> "there isn't much there." Defense counsel has repeated this refrain
> throughout this case. Plaintiff continues to refuse to accept it.

LF1726/3 (emphasis added; record citation omitted).

Washington responded on August 24, 2020, yet again disagreeing with Sioux
Chief's interpretation of Interrogatory 11:

> ***In opposition to Plaintiff's first motion to enforce, Defendant
> indicated that it limited its initial discovery responses to "prior
> lawsuits," but the scope of Plaintiff's requests were not limited
> to just lawsuits – they also covered complaints made internally
> within the company and externally with agencies such as the
> EEOC and MCHR***. Defendant states in its opposition to Plaintiff's
> present motion: "Regarding other complaints, there are none," which
> might be construed as a suggestion that no other responsive
> information exists. But Defendant follows that suggestion with
> another statement that implies Defendant is still interpreting
> Plaintiff's requests to call for _lawsuits_: "As a result of this and despite
> being in business for several decades, [Sioux Chief] remains virtually
> _litigation_ free." Again, Plaintiff's requests do not just seek "lawsuits"
> and "litigation." If there are no other internal complaints or charges
> filed with the EEOC or MCHR, that is fine. But Defendant should
> make that clear in its discovery responses.

LF1730/6 (first emphasis added; record citations omitted).

11

The circuit court denied Washington's motion to reconsider – once again taking no position on the parties' dispute concerning the meaning and scope of Interrogatory 11.

Washington filed her Third Motion to Enforce Discovery on August 28, 2020. The parties once again disputed the scope of Interrogatory 11, with Washington contending that it did "not just seek 'lawsuits' or 'litigation,'" but instead sought "other internal complaints or charges filed with the EEOC or MCHR." LF1731/4. As explained in § II, above, the circuit court granted Washington's Third Motion only "in part." With respect to Interrogatory 11, Sioux Chief was merely required to provide a _sworn_ rather than unsworn response. The court took no position on the parties' ongoing dispute as to Interrogatory 11's meaning.

Against this backdrop, it was flagrantly inaccurate for the circuit court to state that, "at no time before Plaintiff's Second Motion for Sanctions did Defendant ever argue that the scope of Plaintiff's requests . . . did not cover internal complaints." LF1789/7-8. To the contrary, Sioux Chief had expressed its interpretation of Interrogatory 11 for almost a full year before the filing of Washington's Second Motion for Sanctions. Moreover, there was no "_post hoc_ confusion" over Sioux Chief's position. Rather, the record establishes that the parties _both_ understood how Sioux Chief interpreted Interrogatory 11 – even though they disagreed as to the merit of that interpretation.

The majority claims that Sioux Chief never explicitly stated that it interpreted Interrogatory 11 as being limited "only" to formal lawsuits or charges. Maj. Op. at 17-18. While that adverb may not appear in Sioux Chief's motion papers, however, there was no doubt what Sioux Chief's position was: Washington herself stated in her reply in support of her Second Sanctions Motion (filed in May 2020) that "***Defendant has described the requests as seeking only 'prior lawsuits'***"; Washington argued – contrary to Sioux Chief's position – that "***[t]hese***

12

***discovery requests are not limited to 'prior lawsuits.'*** LF1709/5 (emphasis added).

The majority also suggests that Sioux Chief has not argued on appeal that the circuit court's sanctions ruling was based on a materially incorrect understanding of the procedural history. I disagree. Sioux Chief specifically argued that "[t]he trial court abused its discretion . . . when it found Sioux Chief 'repeatedly violated the Court's orders' and 'has intentionally failed to comply with this Court's May 20, 2020 (sic) Order . . .'" App. Br. 24. In arguing that the sanctions ruling must be reversed, Sioux Chief's briefing references <u>both</u> the limited nature of the circuit court's May 2020 discovery order, <u>and</u> the fact that Sioux Chief made no secret of its reading of Interrogatory 11. Thus, Sioux Chief specifically noted in its opening Brief that "[t]he 'golden rule letter' attached to [Washington's First] Motion [to Enforce Discovery] and required by Local Rule 33.5.4 does not reference any dispute about the meaning of Interrogatory/Request 11." App. Br. 10. Sioux Chief's opening Brief specifically argues that the circuit court's May 2020 discovery order would not have alerted the company that it was required to supplement its response to Interrogatory 11 with internal complaints:

> To be sure, in its May 21, 2020 Order, the trial court ordered Sioux Chief to provide "complete" responses, but nothing about the context of that Order put Sioux Chief on notice that it was being ordered to identify internal harassment complaints. To the contrary, ***the May 21, 2020 Order granted Plaintiff's First Motion to Enforce, which had nothing to do with the meaning of Interrogatory 11***, but rather complained generally that Plaintiff had not received promised documents . . . .
>
> . . . ***[T]he motions that led to the May 21, 2020 Order***, on which the Order of Default relies, ***have nothing to do with the meaning of Interrogatory 11 at all***, much less with whether it included internal harassment complaints.

App. Br. 26-27 (emphasis added; record citation omitted).

Contrary to the circuit court's conclusion that Sioux Chief had concealed its interpretation of Interrogatory 11, Sioux Chief's briefing also argued – with relevant record citations – that it "explicitly and repeatedly demonstrated [its] understanding of Interrogatory 11 in its briefing to the trial court," and that, "[i]n their briefing, the parties exchanged their respective interpretations of Interrogatory 11." App. Br. 25, 28. Sioux Chief's Brief argued that its "repeated statements thus did not reflect disobedience of court authority, but rather a consistent expression of its understanding (correct or not)." App. Br. 25.

## IV. The Circuit Court Abused its Discretion by Basing its Sanctions Ruling on Clearly Erroneous Findings of Fact.

As explained above, the circuit court's decision to strike Sioux Chief's pleadings as a discovery sanction was based on a materially – and demonstrably – mistaken view of the facts.

The circuit court's reliance on untrue facts to justify its sanctions rulings requires that we reverse that ruling. "A trial court can abuse its discretion through the inaccurate resolution of factual issues or through the application of incorrect legal principles." *State v. Carpenter*, 605 S.W.3d 355, 358–59 (Mo. 2020) (quoting *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. 2009)); *see also, e.g., Cooter & Gell v. Harmark Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

I recognize that, if we were to vacate and remand, the circuit court could potentially enter the same sanctions ruling again. But the fact that the circuit court may have authority to make the same discretionary decision, based on an accurate understanding of the facts, does not mean that we should affirm a decision which plainly rests on a materially false factual foundation.

14

**Conclusion**

Because I would reverse the circuit court's judgment, I respectfully dissent.

_____
Alok Ahuja, Judge